UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DEFENDANT'S SENTENCING MEMORANDUM |
| - against - | : | |
| JESUS ALEJANDRO ELIZONDO SANTOS, | : | **21 Cr. 639 (PKC)** |
| Defendant. | : | |

------------------------------------------------------------X

# SENTENCING MEMORANDUM FOR
# JESUS ALEJANDRO ELIZONDO SANTOS

**Jeremy Schneider**
Rothman, Schneider,
   Soloway & Stern, LLP
*Attorney for Jesus Alejandro Elizondo Santos*
100 Lafayette Street, Ste 501
New York, New York 10013
(212) 571-5500

ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

Franklin A. Rothman  Tel: (212) 571-5500
Jeremy Schneider  Fax: (212) 571-5507
Robert A. Soloway
David Stern
———
Rachel Perillo

April 17, 2024

**By ECF & Email**
Hon. P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

        Re:    United States v. Jaramillio
               Including JESUS ALEJANDRO ELIZONDO SANTOS
               21 Cr. 639 (PKC)

Dear Judge Castel:

      I am the attorney for Jesus Alejandro Elizondo Santos, the defendant in the above-named matter, who is scheduled to be sentenced on May 1, 2024. This letter is respectfully submitted in advance of sentencing.

      Mr. Elizondo Santos is a 41-year-old man with no criminal record and no history of violence. He has worked consistently throughout his life and for the last ten years has managed his family's cattle ranch located in Veracruz, Mexico. Mr. Elizondo Santos is a loving father to his 11-year-old son, whom he financially supported prior to his arrest. He is also a devoted partner to his wife and father figure to her two young daughters, whom he also financially supported prior to his arrest in this case.

      Mr. Elizondo Santos is extremely remorseful for his offense conduct and has accepted responsibility for his actions as evidenced by his plea of guilty. He has been in custody at the Metropolitan Detention Center since August 2, 2023, where he has spent approximately nine months living under harsh and inhumane conditions of incarceration, living under lockdown most of the time, through no fault of his own. He was also the victim of violent extortionate threats from other inmates, placing him in fear for his life throughout his entire time in custody. Moreover, because Mr. Elizondo Santo's family reside either in Mexico and Texas, he has had no visits from his family but for one brief visit with his wife a couple of months ago, making his time in custody especially harsher. Despite these more than difficult conditions, he has had no disciplinary infractions while in custody.

1

For the reasons discussed herein, and for those to be discussed at the time of sentencing, it is respectfully submitted that a sentence of 24 months' imprisonment is sufficient but not greater than necessary to achieve the goals of sentencing.

### The Presentence Report and Advisory Federal Sentencing Guidelines

Mr. Elizondo Santos has reviewed the Presentence Report ("PSR") prepared by Probation Officer Jana Nieman dated January 9, 2024 and he objects to certain factual recitations therein, which is discussed below.

*Objections to the Presentence Report*

Mr. Elizondo Santos objects to Probation's statement that he is currently in the United States "illegally" and was here "illegally" when he committed the instant offense. *See* PSR ¶ 38 and PSR at 2, 23. Both of these statements are incorrect. Paragraph 38 states "[a]ccording to ICE records, the defendant is in the United States illegally and he appears to be subject for removal proceedings." PSR ¶ 38. Additionally, Probation incorrectly concludes that Mr. Elizondo Santos "was committing illegal acts [i.e. the instant offense] while also being in the United States illegally," and for this reason, Probation recommends that Mr. Elizondo Santos be sentenced to 54 months' imprisonment, a higher sentence than his co-defendant Pablo Jaramillio, who's offense conduct was "similar in nature" to Mr. Elizondo Santos's.[1] PSR at 23. Page 2 of the PSR also incorrectly categorizes Mr. Elizondo Santos as being an "illegal alien." PSR at 2. It should be noted that counsel raised these objections with Probation, who stated that it "cannot" amend the Presentence Report and advised to make the instant objections to the Court.

First, counsel does not disagree that Mr. Elizondo Santos is subject to removal proceedings, but we object to the PSR's statements that he is an "illegal alien" and is currently "in the United States illegally." PSR at 2, PSR ¶ 38. Mr. Elizondo Santos attempted to enter the United States legally but was arrested because of the instant case and brought into the United States for prosecution in the Southern District of New York. Counsel has conferred with Deportation Officer Matthew Zabbia of the U.S. Immigration and Customs Enforcement New York Field Office, who states that Mr. Elizondo Santos arrived at the United States port of entry in Texas on July 4, 2023 and applied for admission with a B2 visitor's visa. Upon further inspection, immigration officials determined that Mr. Elizondo Santos had a warrant for his arrest in relation to the instant case. His application was therefore denied, and he was then arrested and *paroled into the United States* for purpose of criminal prosecution. Mr. Elizondo Santos is now subject to deportation at the conclusion of his sentence because he is not a United States citizen and is only here because of his prosecution in the instant case. Officer Zabbia explained that although Mr. Elizondo Santos is deportable, that does not mean he is here "illegally", since he tried to enter the United States through the lawful process of applying for a travel visa. Officer Zabbia further emphasized that there is a significant difference between someone like Mr. Elizondo Santos who came into the United States through inspection at the

---

[1] The Court sentenced Mr. Jaramillio to 48 months' imprisonment. It should also be noted that Mr. Jaramillio was released on bail and had not endured any of the harsh conditions at the MDC that Mr. Elizondo Santos has had to live through.

border, and was denied admission, than someone who entered the United States without inspection, or remained in the United States unlawfully after expiration of a visa, the latter of which would be considered an "illegal alien." Thus, based on Officer Zabbia's statements, there appears to be no valid basis for Probation's conclusion that Mr. Elizondo Santos is currently "in the United States illegally," or is an "illegal alien", and we therefore objects to those statements in the PSR. Counsel informed Probation of the information provided by Officer Zabbia, and in response Probation stated that it cannot amend the final report.

Second, it is also incorrect that Mr. Elizondo Santos was unlawfully in the United States at the time of the instant offense in June 2021. PSR at 23. At that time, Mr. Elizondo Santos had legally entered the United States at the Texas border with a B2 visitor's visa, as he has always done upon entering the United States. A photograph of Mr. Elizondo Santos's visitor's visa is attached hereto as Exhibit A.[2] Counsel gave this information to Probation, provided Probation with a photo of the visa, noted our objection, and inquired whether, based on the information provided, it would change its sentencing recommendation. However, Probation replied that its position remains the same because "Mr. Santos was legally in this country under false pretenses that he was here for a legal purpose (tourism, business, etc.) and then committed the instant offense." Mr. Elizondo Santos again objects because he had *legally* entered the United States in 2021 and did not do so under "false pretenses." While he was here in June 2021, Mr. Elizondo Santos conducted legitimate business activity *in addition to* committing the offense. Thus, the fact that he committed the offense while here legally should not render his presence in the United States "illegal." It should also be noted that Mr. Elizondo Santos has longstanding ties to the United States – his parents and his brother reside in Texas, his brother and father are U.S. citizens, he has regularly traveled to the United States since he was a child, entering the country legally through inspection at the border each time, and he has conducted legitimate business activities in the United States as an adult. It is therefore not unusual or unreasonable that Mr. Elizondo Santos was in the United States for legal purposes separate from having committed the instant offense.

For these reasons, Mr. Elizondo Santos objects to the Presentence Report's language that he is an "illegal alien", that he is currently "in the United States illegally", and that he was in the country "illegally" when he committed the offense. It is also respectfully submitted that Probation's recommended sentence of 54 months is unwarranted and "greater than necessary" to achieve the goals of federal sentencing.

### *Mr. Elizondo Santos's Guidelines Calculation*

The PSR's guidelines calculation reflects that which is stipulated to in Mr. Elizondo Santo's plea agreement with the government. His base offense level is 34 pursuant, to U.S.S.G. § 2D1.1(a)(5), with a two-level decrease because he has satisfied all five "safety valve" factors under U.S.S.G. § 5C1.2(a)(1)-(5) and § 2D1.1(b)(18), which the government has agreed to pursuant to the Plea Agreement. Mr. Elizondo Santos receives a three-level reduction in offense level for acceptance of responsibility, which results in a total offense level of 29. He has no

---

[2] Please note that this photograph was provided by Mr. Elizondo Santos's wife, whom only had a partial photo of the visa in her possession, as the actual visa was seized by law enforcement at the time of his arrest.

criminal history points and is therefore in criminal history category I,³ which, when combined with an offense level of 29, yields an advisory Guidelines range of 87 – 108 months' imprisonment.

However, since Mr. Elizondo Santos entered his plea of guilty, the U.S. Sentencing Guidelines have been amended to provide for a 2-level reduction in offense level for offenders who have zero criminal history points and meet additional criteria under U.S.S.G. § 4C1.1. The parties have also agreed pursuant to the Plea Agreement that a 2-level offense level reduction would be warranted under the amended guidelines. PSR ¶ 5(c)(v). It is therefore respectfully submitted that Mr. Elizondo Santos is eligible for an offense level reduction under U.S.S.G. § 4C1.1, which provides for a two level reduction for certain first time offenders with zero criminal history points if they meet the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights offenses); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in continuing criminal enterprise, as defined in 21 U.S.C. § 8848.

As noted, Mr. Elizondo Santos has zero criminal history points and meets the above enumerated criteria. His offense level should therefore be reduced by two points, from a level 29 to a level 27. An offense level of 27 and a criminal history category of I results in an advisory Guidelines range of 70 – 87 months' imprisonment.

### Personal History and Characteristics

Jesus Alejandro Elizondo Santos was born and raised in Mexico. He shares close relationships with his parents, Jesus Edward Elizondo Braun, age 68 (a naturalized U.S. citizen), and Yolanda Santos de Elizondo, whom reside in Rancho Viejo, Texas, and his two siblings, Rodrigo Elizondo Santos, age 38, who resides in Brownville, Texas, and his sister, Yolanda Elizondo Santos, age 35, who resides in France with her husband and newborn baby.

Jesus recalls a pleasant childhood and was well-cared-for by his parents. However, his parents note in their letter to the Court, attached hereto as Exhibit B, that Jesus had many health issues as a baby, including allergies and breathing problems. Once he began school, his parents noticed that he had trouble paying attention. Although he was doing well academically, his

---

³ Mr. Elizondo Santos's only other arrest occurred in Texas on September 5, 2022 and he was released on bail the following day. PSR ¶ 34. I have spoken to the bail bondsman and the court clerk in this case and Mr. Elizondo Santos was never directed to return to court until after he was arrested in the instant case. As such, the case has not yet been resolved.

4

attention span still appeared to be a problem, which Jesus's parents were unsure of how to handle. They eventually took Jesus to see a psychiatrist and he was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and he was prescribed Ritalin, which he took until he was about 15 or 16 years old.

Jesus's father was the primary financial provider for the family. Throughout Jesus's childhood, Mr. Elizondo owned a dairy plant located in Tampico, Mexico that produced cheese and milk. Jesus and his brother would often help their father at the plant. Jesus graduated high school in 2001 and went on to college to study law at Libre de Derecho de Monterrey in Monterrey, Mexico. During his summers off from school, Jesus would work at his father's plant. At about 24 years old, Jesus left school because his father needed his help at the plant, and he began working there fulltime in the sales department.

Although Jesus had a comfortable upbringing, that did not shield him or his family from the crime and corruption that was so prevalent in their community and throughout Mexico. In approximately 2012, Jesus's father was confronted at his plant by a group of men who threatened him and assaulted two of his employees in an attempt to overtake the business. He was ultimately forced to sell the plant for a small amount of money (approximately three times less than it was worth), to be paid over a period of three years with no interest. The plant was Jesus's and his family's main source of income, and selling it caused them great stress and financial hardship. Eventually, Jesus's parents relocated to the United States for their own protection and began permanently residing in Texas. Jesus remained in Mexico and began operating and managing the cattle ranch that his father had previously inherited from his grandfather in 2009, and the ranch then became Jesus and his family's main source of income. Jesus was working at the ranch at the time of his arrest in this case, and he intends to resume working there once he returns to Mexico after completing his sentence.

Jesus's hard work in recent years has all been in an effort to support his 11-year-old son, Santiago, whom he refers to as "the love of my life." PSR ¶ 41. Santiago lives primarily with his mother, whom Jesus separated from when their son was a year old. Jesus has always been an active father, seeing his son multiple times a week and consistently providing him with physical, financial, and emotional support since he was born. In his interview with probation, Jesus's father states that Santiago has been depressed and is struggling with Jesus's absence. Indeed, Jesus deeply misses his son and has been distraught by their separation.

Jesus had dated Santiago's mother since they were eighteen years old, and they married in 2009. The two ultimately grew apart and separated in 2013. At the time, Jesus was also suffering from the financial stress resulting from the loss of his father's business, which he also believes contributed to their separation. They currently maintain a civil relationship, however in the past Jesus had struggled with the frequency that he was permitted to visit his son. Although he saw him often, he found it difficult to be separated from him, and he did not have control over the frequency or duration of their visits. This led Jesus to develop severe anxiety triggered by the uncertainty of his son's visits. In approximately July of 2021, he sought mental health treatment by seeing a psychiatrist, who prescribed him Xanax. Jesus continued to receive treatment and took Xanax for his anxiety up until his arrest in this case, which he felt had improved his emotions and mental state.

Today, Jesus is also a loving partner to his girlfriend, Priscila Madrigal, age 39, who resides in Monterrey, Mexico. Priscila has also submitted a letter to the Court, attached hereto as Exhibit C. Jesus and Priscila have known each other for many years and began a romantic relationship in 2022. Priscila has two daughters, ages 9 and 7, respectively, whom Jesus is very close with and treats as his own children. In her interview with Probation, Priscila states that Jesus is actively present in her children's lives and financially supported them. They look up to Jesus as a father figure and are also struggling with his absence. She believes that Jesus has learned his lesson, and is hopeful that he will contribute positively to society after serving his sentence and returning home.

As evidenced by the letters and statements provided to Probation, it is clear that Jesus maintains loving relationships with his family, who continue to support him while also recognizing the grave mistakes that he has made. They look forward to reuniting with him and especially his reunion with his son, who has had a difficult time without his father around. They will continue to support him throughout his sentence and upon his eventual release from custody.

### Circumstances of the Offense

While the Court is already familiar with the facts of this case from a review of the Presentence Report and having sentenced Mr. Elizondo Santos's co-defendant, Pablo Jaramillio, there are circumstances unique to his crime that should be evaluated in fashioning an appropriate punishment. These circumstances are not presented to minimize the seriousness of his conviction, but they are mentioned as mitigating factors, relevant to his conduct and overall character, which should be considered in formulating a reasonable sentence.

Ms. Elizondo Santos accepted responsibility for his offense conduct as evidenced by his plea of guilty entered on October 18, 2023. He has continuously expressed remorse to counsel and remains deeply embarrassed to have engaged in such poor decision-making, decisions which have put his family and the public in jeopardy. Mr. Elizondo Santos recognizes that his conduct contributed to the harmful epidemic of drug addiction and drug-related crimes in this country and for that he is truly sorry. However, his role in the offense was that of a middleman with absolutely no decision-making authority who merely helped transfer a shipment of cocaine from a shipping truck to another shipping truck in New Jersey. He was not a leader or organizer in the overarching drug conspiracy, he had no financial stake in the venture, he did not determine the price or amount of drugs that would be shipped or where or how they would be shipped. Thus, Mr. Elizondo Santo's role was that of a dispensable cog in a much larger narcotics trafficking machine. Nonetheless, he accepts full responsibility and has no intention of doing anything like this again.

Additionally, it should be noted that around the time of the offense in June of 2021, Jesus was struggling with anxiety caused by the frequency of his visits with his son. Accordingly, he was under a great deal of stress at the time that he chose to engage in the offense conduct, which is not submitted to excuse his behavior, but to provide some context behind his poor decision-making. Jesus's mental health greatly improved once he began taking medication and

undergoing treatment. He has seen a counselor at the MDC[4] and wishes to continue mental health treatment throughout his sentence and following his release.

### Time Served Under Harsh and Inhumane Conditions of Incarceration at the Brooklyn Metropolitan Detention Center

Mr. Elizondo Santos has been detained at the Brooklyn Metropolitan Detention Center ("MDC") since August 2, 2023 and he has sustained no disciplinary infractions, which is remarkable considering the atrocious living conditions at this Bureau of Prisons facility. The Court is well familiar with the many problems plaguing the MDC, which has been the target of much deserved public criticism in the last few years. In a letter dated August 16, 2022, local officials in Brooklyn described the MDC as a facility with longstanding "systemic dysfunction" which "has resulted in years of unacceptable conditions of confinement for detainees, denial of basic necessities, and inadequate access to counsel and legal materials," calling the situation a "humanitarian crisis [that] must be addressed now."[5]

A recent Opinion and Order by the Honorable Jesse M. Furman, dated January 2, 2024, aptly discussed the facility's many documented problems in recent months, including "perpetual lockdowns (no longer explained by COVID-19), dreadful conditions, and lengthy delays in getting medical care," most of which is attributed to short staffing at the facility. *See United States v. Gustavo Chavez*, 22 Cr. 303 (JMF) (ECF Dkt. 31, January 4, 2024) at 3. The court further explained:

> Data provided by the Government (at the Court's direction) confirms that there have been severe staffing shortages at the MDC for years. As of November 2023, only 200 of 301 'authorized, non-supervisory correctional officer positions' at the MDC were filled and, of those 200 officer, thirty-four were either on extended leave or about to be transferred. In other words, as of November 2023, the MDC was operating at only about 55% of its full correctional officer staffing level.

*Id*. (internal citations omitted)

As a result, lengthy institutional lockdowns have been the norm for much of the last year, as the court explained:

> Inmates at the MDC spend an inordinate amount of time on 'lockdown' – that is, locked in their cells, prohibited from leaving for visit, calls, showers, classes, or exercise. [At the date of the Court's Opinion and Order], inmates at the MDC have reportedly been on lockdown for much or all of the last three weeks following an assault on staff, with a maximum of 'two hours outside their cells each day' during a short reprieve. […] For far longer, lockdowns have been

---

[4] Notably, Jesus has not been permitted to take Xanax while in BOP custody and experienced severe withdrawal symptoms during the first few days after he was detained. He has since been prescribed 10 mg of Propranolol twice per day, 50 mg of Sertraline once per day, and 50 mg of Trazodone once per day, as well as counseling.
[5] *See* https://www.brooklynpaper.com/congressional-candidates-call-for-greater-oversight-at-troubled-mdc/

> especially common on weekends and holidays […] confining inmates to their cells is, for at least some inmates, tantamount to near-solitary confinement, a practice that is increasingly viewed as inhumane.

*Id*. at 9 – 10.

Additionally, the MDC is "notoriously and, in some instances, egregiously slow in providing necessary medical and mental health treatment to inmates – especially where such requires the attention of outside providers" and "denials or delays of needed care have reportedly become commonplace." *Id*. at 10 – 12 (internal citations omitted). Judge Furman cites to numerous cases (noting "there are far too many cases to cite") where the MDC failed to provide urgent medical care, and in some instances, where MDC staff actually defied court orders to provide inmates with the necessary care. *See e.g. Id*. at 11 (citing Dec. 15, 2023 Hr'g Tr. at 3-5, 17, *United States v. Young*, No. 22-CR-475 (DLI) (E.D.N.Y. Dec. 15, 2023); Dec. 20, 2023 Hr'g Tr. at 5, 9, *Young*, No. 23-CR-475 (DLI) (E.D.N.Y. Dec. 20, 2023); *Id*. at 12, n.5.

Dangerous and unsanitary physical conditions have included "visible mold on walls and ceilings, contaminated drinking water, vermin infestation, mouse droppings falling through HVAC vents, and roaches in flies in the showers," as well as repeated electrical and plumbing issues. *See United States v. Gustavo Chavez*, 22 Cr. 303 (JMF) (ECF Dkt. 31, January 4, 2024) at 12-13 (citations and internal quotations omitted). Inmates are often served cold, expired and inedible food, and as the Court is likely aware, it was just recently reported that the MDC has been serving weevil or maggot-infested food to inmates.

Indeed, Mr. Elizondo Santos has spent the last nine months living in the hellish conditions described above. Most of his time in custody has been spent on "lockdown", through no fault of his own. At the MDC, inmates are ordinarily permitted to be out of their cells for fourteen hours a day. But on *ordinary* days (separate from the "lockdowns") inmates only leave their cells for a few hours. Since at least the fall of 2023, Mr. Elizondo Santos has been locked down nearly every weekend, which oftentimes continues into the following week. During lengthy lockdowns, inmates have been confined to their cells for days or several weeks at time, only permitted to leave for a shower every few days. They have no contact with their families because phones and computers are shut down, there is no recreation time and no legal visits. The lockdowns also create dangerous conditions, as no corrections officers are in the units during lockdowns, meaning there is nobody available to respond to an emergency.

The MDC is also an extremely violent place, which is often another reason for lengthy lockdowns. Mr. Elizondo Santos stated to Probation that he has never witnessed so much violence in his life and has personally witnessed numerous stabbings and violent fights. In the fall of 2023, he was the victim of extortion and violent threats by gang members residing in his unit at the MDC. Those inmates, whom Mr. Elizondo Santos did not know or have any association with, demanded that he pay them $2,500 or he would be injured or killed. When Mr. Elizondo Santos reported this to MDC staff, they initially responded by putting him in the SHU despite the fact that he had done absolutely nothing wrong and was simply reporting a crime being committed against him. Mr. Elizondo Santos was moved to a different unit without any of his belongings, which were gone by the time that the corrections officer returned to retrieve them

8

later. Thereafter, his wife received a phone call from an unknown person demanding to know Mr. Elizondo Santos's whereabouts and threatened her, claiming that Mr. Elizondo Santos owed them money and that they needed to be paid. Mr. Elizondo Santos feared for his life and that of his family's, and, although the threats eventually stopped, he has remained fearful throughout his entire time in custody.

Mr. Elizondo Santos has also personally experienced inadequate medical care at the MDC. On a Friday in January 2024, he appeared to have developed an allergic reaction to something, resulting in extreme swelling and redness in his face. He was in severe pain and was bleeding form his nose. He requested to see a doctor but was told by the staff that no doctor was available over the weekend. After counsel emailed MDC staff on Sunday evening, Mr. Elizondo Santos was seen by a doctor that Monday.

It is respectfully submitted that the MDC conditions described herein that Mr. Elizondo Santos was forced to endure in pretrial detention, through no fault of his own, has been excessively punitive, which the Court should consider in reaching the appropriate sentence. As stated in *United States v. Phillibert*, 15 Cr. 647 (PAE), 2021 WL 3855894, at *4 (S.D.N.Y. Aug. 27, 2021), "Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts measuring a just sentence." We respectfully submit that the Court should recognize the same in Mr. Elizondo Santos's case and credit him for the time served under the harsh and inhumane conditions at the MDC.

## CONCLUSION

Accordingly, for all of the reasons discussed herein, including Mr. Elizondo Santos's family circumstances, his lack of criminal history, and the nine months in custody under harsh conditions at the MDC, as well as those arguments to be made at the time of sentencing, it is respectfully requested that the Court impose a sentence of 24 months' imprisonment, which would constitute sufficient punishment for Mr. Elizondo Santos while serving the ends of justice.

> Respectfully submitted,
> /s/
> Jeremy Schneider

cc:   Samuel P. Rothschild (by ECF & Email)
      *Assistant United States Attorney*