

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, NY 10278*

April 19, 2024

**BY ECF**
The Honorable P. Kevin Castel
United States District Judge
500 Pearl Street
New York, New York 10007

     **Re:**    *United States v. Jesus Alejandro Elizondo Santos*, **21 Cr. 639 (PKC)**

Dear Judge Castel:

     The Government respectfully submits this letter in advance of sentencing. The Government respectfully submits that a sentence above the 24 months sought by the defense but below the 48 months imposed on codefendant Pablo Jaramillo, which would amount to a sentence below the applicable Guidelines range of 70 to 87 months, would be sufficient but not greater than necessary to serve the purposes of sentencing.

**I.  OFFENSE CONDUCT**

     The defendant participated in a drug trafficking organization (the "DTO") that, between approximately April 2021 and June 2021, was responsible for trafficking at least 123 kilograms of cocaine that moved from Colombia to Mexico and then to the United States, including in New Jersey and New York. In late May or early June 2021, the defendant, who was based in Texas, traveled to New Jersey, where he met a coconspirator ("CC-1") at a truck loading depot and ensured that shipping pallets were removed from one truck and placed into CC-1's truck. Those shipping pallets appeared to contain only fruit. What the workers at the truck loading depot did not know, but what both the defendant and CC-1 knew, was that there was cocaine hidden among the shipment. In fact, that shipment included 100 kilograms of cocaine. (PSR ¶¶ 9-10).

     Later in June 2021, another coconspirator ("CC-2"), who suspected that the DTO was under law enforcement scrutiny, alerted CC-1 that CC-2 was arranging for the defendant to bring CC-1 a new phone, presumably to safeguard from law enforcement communications between CC-1 and CC-2. CC-1 told CC-2 that CC-1 was at a hospital in Manhattan. The defendant again traveled to New Jersey and then proceeded to that Manhattan hospital, where he was encountered by law enforcement. The defendant told law enforcement, in substance and in part, that the defendant had been instructed to deliver a phone to an individual at the hospital. After the defendant was questioned by law enforcement, he was released. (PSR ¶ 11).

     Codefendant Pablo Jaramillo was also involved in the DTO, although Jaramillo and the defendant did not have direct knowledge of one another's participation in the DTO. (PSR ¶ 12). Whereas the defendant participated in the part of the conspiracy responsible for transporting the cocaine up to the New York / New Jersey area, Jaramillo participated in the part of the conspiracy

responsible for selling the cocaine once it arrived. (*See* Dkt. 27 at 1). Specifically, before the defendant's first trip to New Jersey to meet CC-1 ever occurred, Jaramillo, who operated a restaurant in New Jersey, agreed to host at his restaurant a meeting attended by multiple coconspirators, including CC-1 and an individual who Jaramillo believed could be a potential purchaser of cocaine ("CC-3"). (*See* Dkt. 27 at 1). Jaramillo was paid for brokering the introduction between, among others, CC-1, on the one hand, and CC-3, on the other hand, and Jaramillo was supposed to receive a percentage of each kilogram of cocaine that CC-3 sold. (*See* Dkt. 27 at 1).

In total, the DTO transported at least 123 kilograms of cocaine to the New Jersey area. On June 14, 2021, law enforcement seized 123 kilograms of cocaine after CC-1 attempted to sell approximately 10 kilograms in Manhattan to an individual who, unbeknownst to CC-1, was a confidential source of the Drug Enforcement Administration. (*See* PSR ¶¶ 10, 13).

## II. PROCEDURAL HISTORY AND GUIDELINES RANGE

On August 25, 2022, a grand jury returned a sealed indictment charging the defendant with one count of conspiring to distribute and possess with intent to distribute five kilograms and more of mixtures and substances containing a detectable among of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A). (PSR ¶ 1). On July 4, 2023, the defendant was arrested on that indictment when he attempted to enter the United States at a port of entry. (*See* PSR ¶ 13).[1] On October 18, 2023, the defendant pled guilty pursuant to a plea agreement to the one count in the indictment. (PSR ¶¶ 2, 4). That charge typically carries a maximum term of imprisonment of life, a mandatory minimum term of imprisonment of ten years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of five years, a maximum fine, pursuant to Title 18, United States Code, Section 3571, and Title 21, United States Code, Section 841(b)(1)(A), of the greatest of $10,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. (PSR ¶¶ 65, 68, 72-73). Here, however, the defendant appears to meet the "safety valve" criteria set forth in Title 18, United States Code, Section 3553(f), and is therefore not subject to the mandatory minimum terms of imprisonment and supervised release. (PSR ¶¶ 65, 68).

The plea agreement calculated the Guidelines range as 87 to 108 months under the November 1, 2021 version of the Guidelines, which was the version in effect at the time the plea was entered. (PSR ¶ 5). That said, the plea agreement contemplated that the Guidelines range would be 70 to 87 months under the November 1, 2023 version of the Guidelines, which, at the time of the plea, was a forthcoming version. (PSR ¶¶ 5, 67). Now that the November 1, 2023

---

[1] The Government agrees with the defense that the defendant's presence in the United States, both during the commission of the offense and at present, was and is not illegal. (Dkt. 77 at 2-3). It is the Government's understanding that, during the commission of the offense, the defendant was present in the United States pursuant to a visa, and, at present, the defendant is in the United States because he was arrested on the instant indictment while attempting to enter the United States at a port of entry with that visa.

version of the Guidelines is in effect, the parties and Probation agree that the applicable Guidelines range is 70 to 87 months based on these calculations:

The Guideline applicable to the offense charged in the indictment is U.S.S.G. § 2D1.1.3. Pursuant to U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(3), because the offense involved at least 50 kilograms but less than 150 kilograms of cocaine, the base offense level is 34. Pursuant to U.S.S.G. § 2D1.1(b)(18), because the defendant meets the criteria set forth in U.S.S.G. § 5C1.2(a)(1)-(5), two levels are subtracted. Pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b), because the defendant accepted responsibility, three levels are subtracted. Pursuant to U.S.S.G. § 4C1.1(a), because the defendant meets the criteria set forth in U.S.S.G. §§ 4C1.1(a)(1)-(10), two levels are subtracted. In accordance with the above, the applicable Guidelines offense level is 27. (PSR ¶¶ 18-28).

Based upon the information now available to the Government (including representations by the defense), the defendant has no criminal history points. In accordance with the above, the defendant's Criminal History Category is I. Based upon the calculations set forth above, the defendant's applicable Guidelines range is 70 to 87 months. (PSR ¶¶ 31-32, 66).

Probation recommends a sentence of 54 months. (PSR at p. 24).

### III. CODEFENDANT'S SENTENCE

Codefendant Pablo Jaramillo faced a Guidelines range of 87 to 108 months, Probation recommended 36 months, the defense sought home confinement, and the Government requested an incarceratory sentence below the Guidelines range. (Dkt. 27 at 2-3). The Court sentenced Jaramillo to 48 months. (PSR ¶ 7).

In the Government's view, Jaramillo was more culpable than the defendant. For one thing, Jaramillo recruited into the DTO at least one additional individual, CC-3, and Jaramillo made his place of business (his restaurant) available as an important meeting spot for the DTO, whereas the Government has no evidence that the defendant recruited others into the DTO or chose locations for the DTO to meet. Similarly, so far as the Government is aware, Jaramillo had greater insight into the potential scope of the conspiracy than the defendant did. That is to say, Jaramillo recruited CC-3 into the DTO because Jaramillo believed that CC-3 would be able to purchase, and resell, kilograms of cocaine on an ongoing basis—that is why Jaramillo not only was paid for brokering the introduction to CC-3 but also was supposed to get a cut of every kilogram that CC-3 sold. The Government lacks comparable evidence reflecting the defendant's insight into the scope of the conspiracy. Finally, Jaramillo had a prior conviction, albeit a relatively minor one from when he was 18 years old (Dkt. 27 at 2), whereas the defendant does not have any prior convictions (PSR ¶ 30).

### IV. DISCUSSION

Here, the combination of the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate

deterrence to criminal conduct, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, weighs in favor of a sentence above the 24 months sought by the defense but below the 48 months imposed on codefendant Pablo Jaramillo.

A substantial term of imprisonment is necessary to capture the nature and circumstances of the offense, to reflect the seriousness of the offense, and to provide just punishment. The defendant twice traveled to the New York / New Jersey area to conduct operations on behalf of the DTO. The first time, the defendant ensured that shipping pallets that he knew contained cocaine successfully made it from one truck into the truck of another member of the DTO, CC-1. The second time, when others in the DTO, including CC-2, began to suspect that the DTO was under scrutiny, the defendant attempted to bring CC-1 a clean cellphone, but the defendant's efforts were thwarted because he was encountered by law enforcement during the process. Such tangible participation in the DTO is serious conduct deserving of punishment.

A substantial term of imprisonment is also necessary to promote respect for the law and to afford adequate deterrence to criminal conduct, not only for the defendant specifically, but also for society generally. The defendant and others who participate in the trafficking of dangerous substances must understand that their actions negatively impact our communities and that those who perpetuate the drug problem in this Country will be punished appropriately.

Although the defense raises some valid points in mitigation (Dkt. 77 at 4-9), in the Government's view, the defense's requested sentence of 24 months would not be sufficient to serve the retributive and deterrent purposes of sentencing discussed above.

At the same time, the history and characteristics of the defendant and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct call for a sentence below the 48 months imposed on codefendant Pablo Jaramillo. As described above, in the Government's view, Jaramillo was more culpable than the defendant.

## V. CONCLUSION

The Government respectfully submits that a sentence above the 24 months sought by the defense but below the 48 months imposed on codefendant Pablo Jaramillo, which would amount

to a sentence below the applicable Guidelines range of 70 to 87 months, would be sufficient but not greater than necessary to serve the purposes of sentencing.

        Respectfully submitted,

        DAMIAN WILLIAMS
        United States Attorney

by: *Samuel P. Rothschild*
        Samuel P. Rothschild
        Assistant United States Attorney
        (212) 637-2504

cc:    Jeremy Schneider, Esq. (by ECF)